UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**CHRISTOPHER LIGHT,**<br><br>Defendant. | Case No. 24-cr-000195 (JEB) |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

Over the course of less than twenty-four hours, Mr. Light engaged in a spree of violence, targeting four different members of our community. Mr. Light and others robbed or attempted to rob four different people, all strangers to him. Mr. Light and his accomplices brandished firearms at these individuals, threatening them with serious bodily harm or death, and robbing them. He fed on the fear of these strangers just to line his own pockets. This is not Mr. Light's first conviction. He previously has been convicted of the illegal possession of a firearm. Now, however, he has graduated to using illegal firearms to threaten members of our community. Mr. Light and this behavior must be deterred. For the following reasons, the Government requests a sentence of ten years' imprisonment, followed by three years of supervised release.

**BACKGROUND**

*The February 4, 2024, Armed Robbery in Washington D.C.*

On Sunday, February 4, 2024, at approximately 6:45 p.m., Mr. Light and another individual were parked in a white Audi SUV in the Wharf District of Washington, D.C., specifically in a parking area for the nearby bars and restaurants. An individual named P.P. was walking through the area when Mr. Light and the other individual jumped out of the white Audi SUV.  Mr. Light

was armed with a handgun and the other individual was armed with an AR-15-style firearm. Mr. Light and the other individual threatened P.P. with the firearms and took P.P.'s possessions, including an iPhone 15 Pro and two gold chains with pendants. Mr. Light and the other individual then fled in the white Audi SUV.

### *The February 5, 2024, Carjacking in Montgomery County Maryland*

On February 5, 2024, Mr. Light and three other individuals pulled into the 900 block of Thayer Avenue in Silver Spring, Maryland, in the same Audi SUV, and stopped behind a 2017 Mercedes E300 occupied by two individuals. Mr. Light and others ran out of the Audi SUV brandishing firearms, including an AR-15 style rifle. Mr. Light and the other individuals instructed the Mercedes' two occupants to get out of the car and turn over their possessions. Mr. Light and the others stole a Gucci handbag, a Louis Vuitton wallet, Bulgari watch, a gold necklace, a black Mark Jacobs bag, three cellphones, and various identification cards and credit cards in the name of the Mercedes' occupants. Two of the individuals with Mr. Light stole the Mercedes, while the others fled in the white Audi SUV.

### *The February 5, 2024, Attempted Armed Robbery in Washington D.C.*

On February 5, 2024, at around 3:00 PM, Mr. Light and another individual approached a man who was attempting to withdraw money from an ATM outside the PNC Bank in the 2000 Block of Martin Luther King, Jr. Avenue Southeast, Washington, D.C. Mr. Light and the other individual parked and exited a white Audi SUV approaching the man from behind. Mr. Light and his companion brandished and pointed a black firearm at the Complainant and said: "Don't move, give me that shit." The man ran away from Mr. Light and the other individual, and nothing was stolen from him.

*Mr. Light's Arrest*

Mr. Light was arrested on March 25, 2024 in relation to these offenses. In the residence in which he was found, and a residence which he had reported previously to be his residence, law enforcement found a black Anderson Manufacturing model AM-15, multi-caliber pistol, bearing serial number 20062443 located in a freezer along with a black magazine containing fifty rounds of ammunition.

*The Pre-Sentence Investigation Report*

The Pre-Sentence Investigation Report (PSIR) sets forth Mr. Light's personal history. ECF No. 27. Mr. Light is twenty-two years' old and was born and raised in Washinton, D.C. PSIR at 3 and ¶ 53. He was raised primarily by his mother. PSIR at ¶ 56. He reported a neutral childhood, though also reported that his family struggled financially and that he both witnessed and experienced abuse. PSIR at ¶¶ 56-58. Mr. Light completed high school. PSIR at ¶ 84. Mr. Light reported sporadic summer employment during high school as well as doing odd jobs around the Wharf District. PSIR at ¶¶ 91-92.

Mr. Light suffers from asthma. PSIR at ¶ 69. Mr. Light also has been diagnosed with ADHD, bipolar disorder, and a mood disorder. PSIR at ¶ 74. Mr. Light reported abusing alcohol, marijuana, opiates, and lean, but noted that he had been sober since his arrest. PSIR at ¶ 79.

Mr. Light has one previous adult conviction. PSIR at ¶ 44. On December 31, 2021, MPD officers were conducting firearm interdiction due to the surge in violent crime in the area. *Id*. Officers pulled into the parking lot of 4635 South Capitol Street Southeast and observed a dark gray Infiniti idling with no driver. *Id.* The Infiniti had no front tags, and tints that appeared darker than the legal limit allowed in the District of Columbia. *Id.* The front passenger, and sole occupant of the vehicle, Mr. Light, appeared to be shuffling around as soon as he saw the officers. *Id.*

Officers approached Mr. Light and observed him smoking a marijuana cigarette. *Id.* Officers tapped the window of the vehicle to address the numerous concerns. *Id.* The officers then observed a bulge in Mr. Light's crotch area and that Mr. Light was clenching his legs together tightly. *Id.*

Officers gave Mr. Light numerous commands to open the door, but Mr. Light refused. *Id.* Officers told Mr. Light that if he did not comply, they would break the vehicle's window. Officers then broke the window and removed Mr. Light from the vehicle. *Id.* Directly underneath where Mr. Light was sitting was a black AR-style handgun. *Id.*

The firearm recovered was a black AR-style "Ghost Gun" with one round in the chamber and an additional fourteen round in the forty-five round capacity magazine. *Id.* On March 25, 2022, Mr. Light pled guilty to Attempted Possession of a Large Capacity Feeding Device and Attempted Carrying a Pistol Without a License Outside a Home or Business. *Id.* He was sentenced to 180 days' execution of sentence suspended as to all. *Id.* His conviction was set aside under the Youth Rehabilitation Act when he successfully completed probation on April 13, 2023. *Id.*

## ARGUMENT

Although the Sentencing Guidelines are advisory, under *United States v. Booker*, a sentencing court "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that while the Guidelines provide "the starting point and the initial benchmark" for sentencing, the district court should consider all the § 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 49–50 (2007). The Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007).

The listed factors in 18 U.S.C. § 3553(a) include the following:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for –

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –

(i) issued by the Sentencing Commission . . .; and

(ii) that, . . . are in effect on the date the defendant is sentenced; . . .

(5) any pertinent policy statement –

(A) issued by the Sentencing Commission . . . and

(B) that, . . . is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

But the Sentencing Guidelines are only "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). They "are not the only consideration." *Id.* A sentencing judge "should . . . consider all of the § 3553(a) factors," and "[i]n so doing, . . . may not presume that the Guidelines range is reasonable." *Id.* at 50. "[I]t is not error for a district court to enter

sentencing variances based on factors already taken into account by the Advisory Guidelines, in cases in which the Guidelines do not fully account for those factors, or when a district court applies broader § 3553(a) considerations in granting the variance." *United States v. Ransom*, 756 F.3d 770, 775 (D.C. Cir. 2014) (citation and internal quotation marks omitted). In doing so, "the district court can rely on hearsay as evidence for its findings." *United States v. Miller*, 35 F.4th 807, 818 (D.C. Cir. 2022). *See also United States v. Jones*, 744 F.3d 1362, 1368 (D.C. Cir. 2014) ("Clear precedent permits hearsay to be used in sentencing decisions."). And the sentencing court can consider conduct by a defendant that was not charged or even for which a defendant was acquitted. *See United States v. Settles*, 530 F.3d 920, 923 (D.C. Cir. 2008) ("[L]ong-standing precedents of the Supreme Court and this Court establish that a sentencing judge may consider uncharged or even acquitted conduct in calculating an appropriate sentence, so long as that conduct has been proven by a preponderance of the evidence and the sentence does not exceed the statutory maximum for the crime of conviction.").

## THE APPLICABLE SENTENCING GUIDELINES

The PSIR estimates Mr. Light's offense level to be 19 and his criminal history to be category I, yielding a Guidelines imprisonment range of thirty to thirty-seven months' imprisonment which must be imposed consecutively to a sentence of eighty-four months' imprisonment. PSIR at ¶¶ 45, 103-104. The PSIR also indicates that a Guidelines range fine would be between $10,000 and 100,000, and a Guidelines range for supervised release is one to three years. PSIR at ¶ 112. The Government agrees with these calculations.

## THE GOVERNMENT'S SENTENCING RECOMMENDATION

The Government requests that the Court impose a sentence of ten years' incarceration followed by three years of supervised release. This sentence reflects the repetitive and violent

6

nature of these offenses, the fear and violence inflicted upon the victims, and provides adequate deterrence to others in the community given the danger presented by these types of violent crimes.

I.      **The Nature and Circumstances of Mr. Light's Offenses.**

Over a single twenty-four-hour period, Mr. Light terrorized four different members of our community.

On February 4, at 6:45 PM, around dinnertime, Mr. Light and a co-conspirator drove to the Wharf District, an area filled with shops and restaurants. As members of our community sat eating dinner in one such restaurant, Mr. Light and his co-conspirator brazenly ambushed a man. Mr. Light wielded a handgun while his co-conspirator wielded an AR-style firearm.



Terrified, Mr. Light's target gave up his possessions.

Robbing just one member of our community was not enough for Mr. Light. At around 4:30 the next morning, Mr. Light and others drove to Silver Spring, Maryland, where they ambushed a couple sitting in a 2017 Mercedes. Mr. Light and his accomplices brandished firearms, including an AR-style rifle, terrifying the couple. They stole their personal belongings and the Mercedes, before abandoning the Mercedes in Washington, D.C.

Mr. Light's spree of violence and fear was not finished. At 3:00 PM, in broad daylight, Mr. Light and another accomplice attempted to ambush a man as he was withdrawing cash from the

ATM. Mr. Light and his accomplice once again brandished firearms at a member of our community. Fortunately, their intended victim was able to escape before he could be robbed or harmed.

All four of these individuals were complete strangers to Mr. Light. Wielding illegal and dangerous weapons, Mr. Light and his accomplices terrified these individuals. Why? Solely for money. Mr. Light and his accomplices did not even use the Mercedes they stole, abandoning it shortly after stealing it.

Each of these offenses was violent and dangerous. As Judge Berman Jackson explained *United States v. Lee*, "[t]he best outcome, if everything goes as planned during an armed robbery, involves a victim's being placed at risk and feeling terrified for his safety, possibly for years to come, and if things go wrong, someone—or multiple people—could be killed or seriously injured." 195 F. Supp. 3d 120, 129 (D.D.C. 2016). Mr. Light terrorized four different strangers to enrich himself. What was a reckless spree for Mr. Light represents years of terror for these innocent victims. They will not soon forget being threatened with firearms.

His conduct merits a significant term of incarceration.

II.     **Mr. Light's History and Characteristics.**

Mr. Light is young, had a difficult childhood, and only has a single prior conviction. The Government acknowledges each of these factors. His prior conviction is notably for the illegal possession of a firearm. Here, Mr. Light went further, making use of a firearm to terrify others. While Mr. Light reportedly successfully completed his probation for his 2022 gun conviction, his behavior here indicates that a probationary sentence was insufficient to deter criminal conduct.

Despite having graduated high school, Mr. Light does not appear to have made any serious attempt to obtain employment. Instead, in the instant offense, he attempted to earn money by

violently robbing others. While his history and characteristics provides some mitigation, his conduct still necessitates a significant sentence.

### III. The Need for the Sentence Imposed.

The requested sentence meets the goals of sentencing. The sentence provides specific deterrence: it will keep our community safe from Mr. Light for a significant period of time. It provides general deterrence: it will signal to the community that engaging in armed violent conduct is a deadly serious matter and hopefully deter others from doing so. And it provides an opportunity for Mr. Light to reflect on the serious and repetitive nature of his crimes.

Hours separated each of these robberies. During those hours, Mr. Light could have reflected on the fear and violence he caused each victim while armed with a deadly weapon. He did not. Instead, despite having time to reflect and question his decisions, each time, Mr. Light armed himself and went to threaten another member of our community. Two of his attacks were brazen: one in front of a group of restaurants at dinner time on a Sunday, and the other in broad daylight in a commercial strip. His brazen and reckless offenses merit a significant term of incarceration.

## CONCLUSION

For all the foregoing reasons, the Government respectfully requests that the Court impose a sentence of ten years' incarceration, followed by three years of supervised release.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:     */s/ Cameron A. Tepfer*
Cameron A. Tepfer
N.Y. Attorney No. 5248208


Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
202-258-3515
Cameron.Tepfer@usdoj.gov